IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONIA ROYAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1362-K-BK |
| | § | |
| CCC&R TRES ARBOLES, LLC, | § | |
| | § | (Referred to the Magistrate Judge) |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, and RECOMMENDATION

Now before the Court is Defendant's *Motion for Summary Judgment* (Doc. 59). After reviewing the pleadings and applicable law, it is recommended that the motion be GRANTED.

### I. BACKGROUND

Plaintiff alleges: (1) sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964; (2) gender discrimination and retaliation under the Texas Labor Code; (3) negligent hiring, training, supervision, and retention; (4) assault; and (5) intentional infliction of emotional distress (IIED) – all based on incidents that occurred during the three- or four-day period[1] she was employed as a leasing agent at one of Defendant's apartment complexes. (Doc. 18 at 4-9; Doc 61 at 6).

Plaintiff testified at deposition that, on about 12 occasions during her brief period of employment, maintenance workers Gerald Jordan and Robert Smith, separately and together, hovered around her and made sniffing noises. (Doc. 73-1 at 12-15). Plaintiff commented at the time, "I don't like you guys doing that" and "can you all . . . stop hovering over this desk and

---

[1] In her amended complaint, Plaintiff alleges she was employed by Defendant August 6-8, 2009; however, she testified at deposition that she was employed August 3-6, 2009.

me;" she also made "sighing sound[s]" to express her dislike. *Id*. at 13-14. Plaintiff averred that she was seated during most of the incidents, which she described as "uncomfortable," and that she "would try to be still just so [Jordan and Smith] wouldn't think [she] was being a snooty person." *Id*. 13. On occasion, as Plaintiff exited the restroom, Jordan and Smith would "come over to where [she] was and then do that sniffing part of that thing." *Id*. at 18.

At her deposition, Plaintiff described other incidents she deemed sexually harassing, testifying that on one occasion, Jordan sat on a credenza a foot or two behind her with a "hard-on." *Id*. at 15-16. Plaintiff further testified that at a staff meeting called to clear the air, on what would be the morning of her last day of employment, Jordan made comments like he "needed to get a release or something" or "something like he needed to have sex ... be with a woman," which Plaintiff interpreted as sexual "innuendo" meaning he wanted to have sex. *Id*. at 19. Plaintiff also asserted that she once overheard Jordan comment as a female prospective tenant passed, "that's a body." *Id*. at 19.

Plaintiff contends that she notified her direct supervisor, Asia Brazil, and assistant manager, Robin Granger, of the incidents, but Granger told her to "[j]ust let it slide" and "[j]ust let it go." *Id*. at 24-28, 45. Plaintiff further alleged that Granger himself once walked up behind her while she was at the filing cabinet, and she fell into him when she turned around. *Id*. at 20-22. According to Plaintiff, the two only made physical contact for about two seconds when Granger caught her as she was falling and she was unaware how long he had been standing behind her. *Id*.

Finally, Plaintiff contends she was assaulted by Brazil pointing a gun at her. (Doc. 18 at 4, 8-9; Doc 61 at 87, 102; Doc 73-1 at 32). Plaintiff alleges that she was subsequently fired by Brazil because she complained about all these incidents. (Docs. 18 at 4-7; 61 at 87, 90).

## II. APPLICABLE LAW and ANALYSIS

Defendant moves for summary judgment contending Plaintiff cannot make a *prima facie* case for her sexual harassment and retaliation claims (Doc. 60 at 13-21), and cannot prove her claims of assault, IIED, or negligent hiring, training, supervision, and retention. *Id*. at 21-24. Plaintiff responds that there are genuine issues of material fact regarding each of her claims. (Doc. 77).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts

in favor of the nonmoving party. *Id*. However, Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458.

## Title VII and Texas Labor Code Claims

As a preliminary matter, the Court lacks jurisdiction to consider Plaintiff's claims of sexual discrimination (Doc 18, *passim*),[2] since she failed to make any sexual discrimination allegation in her EEOC charge (Doc. 61 at 86-90).[3] Moreover, as the law relevant to Title VII claims also governs Texas Labor Code claims, Plaintiff's corresponding federal and state claims under those statutes are treated as one in the same for the purpose of determining whether summary judgment should be granted.[4]

---

[2] Plaintiff's First Amended Complaint was filed *pro se* and prior to the notice of appearance by her current lead counsel. For this reason, the Court liberally construes the pleading. *See Erickson v Pardus*, 551 U.S. 89, 94 (2007) (holding *pro se* litigants pleadings are to be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers).

[3] *See generally* 42 U.S.C. § 2000e-5. (no federal action alleging employment discrimination may be brought unless the alleged discrimination has been made the subject of a timely EEOC charge). A plaintiff's failure to exhaust his administrative remedies "wholly deprives" the district court of jurisdiction to hear his claims. *Tolbert v. United States*, 916 F.2d 245, 247 (5th Cir. 1990).

[4] *Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 912 (5th Cir. 2000) (citing *Leatherwood v. Houston Post Co.*, 59 F.3d 533, 536 n.5 (5th Cir.1995)); *see also* Tex. Labor Code § 21.001 (purpose of the TCHRA is to provide for execution of Title VII).

*Sexual Harassment*

To survive summary judgment on a claim of employment discrimination based on circumstantial evidence, the plaintiff first must establish a *prima facie* case. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012). A *prima facie* case is established by evidence showing that (1) plaintiff is member of a protected group; (2) plaintiff was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of plaintiff's employment; and (5) plaintiff's employer knew or should have known of the harassment and failed to take prompt remedial action. *Id*.

An action for sexual harassment in violation of Title VII requires the plaintiff to demonstrate "that the harassment created a hostile or abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill*, 433 F.3d at 434. (citing *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment, that is, an environment that a reasonable person would find hostile or abusive, is beyond Title VII's purview. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Common sense, and an appropriate sensitivity to social context, enables courts to distinguish between simple teasing and conduct which a reasonable person would find severely hostile or abusive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

In the case *sub judice*, assuming *arguendo* that Plaintiff can establish all other elements of her sexual harassment claim, the harassing conduct she complains of does not rise to the level of severity or pervasiveness necessary to affect a term, condition, or privilege of her employment.

While Plaintiff perceived the complained of conduct as offensive, such conduct falls short of being objectively offensive.

In determining if the harassment affected a term, condition, or privilege of employment, courts "look at the totality of the circumstances including the frequency of the discriminatory conduct; its severity; [and] whether it is physically threatening or humiliating, or a mere offensive utterance." *Harvill*, 433 F.3d at 434.  Here, Plaintiff admits that, save when Granger caught her as she was falling, none of her co-workers ever touched her.  (Doc. 73-1 at 12, 20-22). And while the invasion of one's personal space can be annoying (Doc. 73-1 at 13-14), it is neither physically threatening nor humiliating.  As far as Jordan's comments within Plaintiff's earshot about needing "to get a release" and "that's a body," they were no more than offensive utterances and, importantly, neither was directed at Plaintiff.  *Id*. at 19.  Moreover, with the exception of the sniffing noises, none of the other complained of actions were repetitive, let alone pervasive.

Indeed, Plaintiff complains of a series of isolated incidents involving three different male co-workers, however, neither incident is "extremely serious" so as to effect a change in the terms and conditions of her employment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (citation omitted).  Even on the occasion Plaintiff observed Jordan sitting on a credenza a foot or two behind her with an erection was an isolated incident, lasting some three to five minutes, during which Jordan neither spoke nor made contact with her.[5]

---

[5] At her deposition, Plaintiff, for the first time, claimed that Gerald Jordan sat on a credenza a few feet behind her with an erection.  (Doc. 73-1 at 15-16).  While Defendant argues that the Court cannot consider this allegation as it was not presented to the Equal Employment Opportunity Commission (EEOC), considering this incident as additional evidence of Plaintiff's general harassment claims does not change the Court's conclusion that the totality

One of the final factors the court considers in determining whether harassment is actionable under Title VII is whether it "<u>unreasonably</u> interferes with an employee's work performance." *Harvill*, 433 F.3d at 434 (emphasis added). Plaintiff neither alleged in her complaint nor testified at deposition that the actions of the male co-workers interfered with her ability to do her job.

Allegations of sexual harassment much more egregious than those presented here have been held by the Court of Appeals for the Fifth Circuit to be beyond the purview of Title VII. *See, e.g. Hockman v. Westward Comms.*, LLC, 407 F.3d 317, 328 (5th Cir. 2004) (sexually suggestive comments, slapping plaintiff on the backside with a newspaper, grabbing and brushing up against plaintiff's breasts, and attempting to kiss plaintiff did not qualify as severe conduct that would affect a term, condition, or privilege of employment.); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (describing the harassment, which included remarks that plaintiff's elbows were the same color as her nipples, commenting on the size of plaintiff's thighs while pretending to look under her desk, numerous occasions of plaintiff's arm being touched, and attempting to look down the plaintiff's clothing was not severe enough to constitute sexual harassment).

Considering the evidence in the light most favorable to Plaintiff, as a matter of law, her claims do not come close to the level of severity or pervasiveness that would affect a term, condition, or privilege of employment. Accordingly, Plaintiff cannot make a *prima facie* case for sexual harassment and Defendant should be GRANTED summary judgment on those claims.

### *Retaliation*

---

of conditions Plaintiff describes were not severe or pervasive enough to affect a term, condition, or privilege of her employment.

Plaintiff contends that Defendant retaliated against her by firing her after she complained of the alleged sexual harassment discussed above. (Docs. 18 at 4-7; 61 at 87, 90). However, Defendant argues that it should be granted summary judgment because, *inter alia*, even if Brazil had knowledge of Plaintiff's complaints, the conduct complained of did not constitute opposition activity or motivate the decision to terminate Plaintiff. (Doc. 60 at 17-21). Plaintiff responds that she had a reasonable and good faith belief she was reporting sexual harassment. (Doc. 77 at 40-43). Plaintiff misapprehends the law.

To make a *prima facie* case for retaliation under Title VII, a plaintiff must show (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez*, 670 F.3d at 657. "Protected activities consist of (1) opposing any practice deemed an unlawful employment practice by title VII (the 'opposition clause') or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under title VII (the 'participation clause')." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir. 1998) (citation omitted). Here, Plaintiff has neither argued nor offer any evidence that she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII prior to her discharge. Thus, she has no retaliation claim under the participation clause and can only assert an opposition clause claim. *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000).

To establish that she engaged in the protected activity of opposing an employment practice deemed unlawful under Title VII, Plaintiff need only show that she had an <u>objectively reasonable</u> belief that Defendant was engaged in unlawful employment practices. *Id.* Plaintiff cannot meet that burden even given the most deferential review of the evidence supporting her

claims. Plaintiff testified that she only told Granger and Brazil that she did not appreciate Jordan and Smith hovering around her and making sniffing noises. (Doc. 73-1 at 24-28, 45). No reasonable person would believe that the reported conduct constituted an unlawful employment practice under Title VII. Consequently, even if Plaintiff could prove that she was terminated because of her complaints to Granger and Brazil, her retaliation claim would fail. Thus, Defendant's motion for summary judgment should be GRANTED.

### State Law Tort Claims

Plaintiff brings claims for assault, intentional infliction of emotional distress, and negligent hiring, training, supervision, and retention – all premised on Brazil allegedly pointing a gun at her. (Docs. 18 at 8-10; 77 at 29, 33-34). Plaintiff testified at deposition that "Paula," the sister of a denied rental applicant, confronted Brazil about getting the application fee/deposit back, and "[j]ust ambushed [Brazil] with profanity." (Doc. 73-1 at 31-32). According to Plaintiff, during the encounter which Plaintiff described as "volatile," Paula threatened to assault Brazil and Brazil threatened to call the police. *Id*. at 32. After Paula left, Brazil retrieved a gun from her car and took it into her office as Plaintiff followed trying to determine "what is going on?" *Id*. Plaintiff detailed the ensuing events:

> I'm in her office. I'm trying to get out of the way of her gun. I'm in the corner and she cocks her gun like that and she and I make eye contact with each other while the barrel of her gun is pointed like in the center of my chest. She could have shot me in my chest or in my stomach and taken me away from my children.

*Id*. According to Plaintiff, she asked Brazil if she was mad enough to kill this person [presumably Paula]. *Id*. at 33. Subsequently, Brazil drove away from the complex, taking the gun with her. *Id.* at 32. Plaintiff testified that Brazil returned about 30 to 40 minutes later and, after conferring privately with Granger, fired Plaintiff. *Id*. at 33, 35. Plaintiff did not testify that

Brazil actually threatened her with the weapon, only that she felt threatened because Brazil knew where she lived.  *Id.*

### *Assault and Intentional Infliction of Emotional Distress*

Plaintiff relies on the vice-principal doctrine under Texas common law to impute to Defendant liability for Brazil's actions.  (Doc. 77 at 25-31).  Defendant seeks summary judgment in its favor as to this claim, contending that Brazil is not its vice-principal and any assault was outside of the scope and course of Brazil's employment.  (Doc. 80 at 12-15).

"As a general rule in Texas, an employer cannot be vicariously liable for the intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment."  *Wrenn v. G.A. T.X. Logistics, Inc.*, 73 S.W.3d 489, 494 (Tex. App.-Fort Worth 2002, no pet.).  However, "[w]hen actions are taken by a vice-principal of a corporation, those acts may be deemed to be the acts of the corporation itself."  *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999).  A person is only a vice-principal if they "enjoy a measure of authority sufficient to enable one to consider his acts as those of the company."  *Garrett v. Great Western Distributing Co.*, 129 S.W.3d 797, 802 (Tex.App.-- Amarillo 2004, pet. denied) (citations omitted).

The Court need not reach the issue of whether Brazil was Defendant's vice-principal, for even if she enjoyed such a relationship, her tortious acts can only be imputed to Defendant if said acts were "encompassed within the duties assigned."  *Garrett*, 129 S.W.3d at 802; *Rhodes, Inc. v. Duncan*, 623 S.W.2d 741, 744 (Tex. App.-- Houston 1981, no writ) ("We hold that the liability of a corporation for the acts of its vice-principal is not absolute but is limited to those acts which are referable to the company's business to which the vice-principal is expressly, impliedly or apparently authorized to transact.").  That is clearly not the case here.

Even when the evidence is viewed in the light most favorable to Plaintiff, there can be no doubt that Brazil's actions were not referable to Defendant's business or in discharge of any duty owed by Brazil to Defendant. The undisputed evidence is that Brazil managed the apartment complex where the events underlying this suit occurred, and that her duties included firing and hiring employees. (Docs. 61 at 102; 73-1 at 6-8; 73-3 at 4-7). Plaintiff offers no evidence that Brazil was authorized or required to use a gun to perform her duties, and the <u>only</u> evidence is that Brazil was permitted to possess a gun on the premises of the apartment complex for her personal protection. (Doc. 61 at 100, 103; 73-2 at 31, 34). Thus, there is no genuine issue of material fact as to these claims, and Defendant's motion for summary judgment should be GRANTED.

### ***Negligent Hiring, Training, Supervision, and Retention***

Plaintiff's negligence claims also stem from the alleged assault by Brazil discussed *supra*. (Doc. 77 at 44-45). Defendant moves for summary judgment regarding Plaintiff's negligent hiring, training, supervision, and retention claims arguing, *inter alia*, that it did not breach any duty owed Plaintiff. (Docs. 60 at 23-24; 23-25). In response, Plaintiff avers that Brazil was continually absent, had a history of being overly sensitive and confrontational, was allowed to have a gun at work without any training, and ultimately pointed a gun at Plaintiff. (Doc. 77 at 43-47).

To establish a claim for negligent hiring, training, supervision, and retention, a plaintiff must prove the following elements: (1) a duty to hire, train, supervise, and retain competent employees; (2) an employer's breach of the duty; and (3) that the employer's breach of the duty proximately caused the damages sued for. *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. App. – Amarillo 2010, pet denied).

Negligence in hiring or retention requires that the employer's failure to investigate,

>screen, or supervise its employees proximately caused the injuries the plaintiff alleges. An employer is not negligent when there is nothing in the employee's background that would cause a reasonable employer not to hire or retain the employee. To establish a claim for negligent training, a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries. To establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries.

*Dangerfield v. Ormsby*, 264 S.W.3d 904, 912-13 (Tex. App. – Fort Worth 2008, no pet.) (citations omitted).

Defendant has presented evidence that it was unaware of Brazil ever threatening anyone before the alleged incident involving Plaintiff, and that Brazil's direct supervisor trained her regarding her employment-related responsibilities, including counseling, reprimanding, and terminating employees. (Doc. 61 at 100-01). In response, Plaintiff points to evidence that during the three or four days she worked for Defendant, Brazil was sometimes absent, had three confrontations with tenants, was allowed to have her gun at work for personal safety, and eventually pointed that gun at Plaintiff. (Doc. 77 at 45-46). Noticeably lacking is any evidence that Brazil was incompetent or unfit for her position as apartment manager, or that Defendant failed to provide to Brazil adequate training and supervision, beyond that already given. *See Dangerfield*, 264 S.W.3d at 913. Plaintiff does not suggest, let alone present any evidence, that Brazil previously engaged in assaultive behavior of which Defendant was or should have been aware. *See Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (In a negligent hiring, retention, and supervision case, foreseeability is a component of the proximate cause element).

Plaintiff's has not produced evidence raising a genuine issue of material fact that Defendant was negligent in its hiring, retention, training, or supervision of Brazil, or that the

alleged negligence was the proximate cause of her injuries. Thus, summary judgment should be GRANTED in favor of Defendant.

## IV.  CONCLUSION

The Court **RECOMMENDS** that Defendant's *Motion for Summary Judgment* (Doc. 59) be **GRANTED** and Plaintiff's claims be dismissed with prejudice.

**SIGNED** on August 9, 2012.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE